IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JOSE MODESTO PERDOMO-ROSA,**
   Plaintiff,

   v.                                                              Civil No. 02-2114(DRD)

**CORNING CABLE SYSTEMS, AND/OR**
**CORNING CABLE P.R., INC.,**
   Defendant.

## OPINION AND ORDER

Pending before the Court is defendant's *Motion Requesting 28 U.S.C. §1292 Certification for Interlocutory Appeal* (Docket No. 60). Basically, defendant moves the Court to allow to proceed in an interlocutory appeal on the grounds that the Court failed to adopt "a combined 'objective' and 'subjective' test as required by the First Circuit in *Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27 (1st Cir. 2003)(and further clarified *en banc* at 337 F.3d 1)". For the reasons herein stated the Court hereby **DENIES** defendant's *Motion Requesting 28 U.S.C. §1292 Certification for Interlocutory Appeal* (Docket No. 60).[1]

## FACTUAL BACKGROUND

On September 30, 2004, the Court issued an Opinion an Order (Docket No. 55) wherein a Report and Recommendation issued by Magistrate Judge Justo Arenas was adopted *in toto* concluding that instant defendant had met the first prong of the *Faragher/Ellerth* defense inasmuch defendant had in place an anti-discrimination policy which included a grievance procedure known to plaintiff; and that defendant had provided its employees seminars and other educational tools regarding unacceptable discriminatory conduct. However, as to the second prong of the defense, the Court reasoned that there was a triable issue requiring a factual determination of plaintiff's apprehension to exhaust said procedure and blow the whistle against his supervisors based on the credible fear that his complaint would not be taken seriously since his supervisors were personally

---

[1] Further, the Court notes that defendant filed a *Post Hearing Brief and Submission of Translations of Exhibits* (Docket No. 75). Plaintiff has also filed its *Motion to Strike Defendant's Post Hearing Brief* (Docket No. 76) moving the Court to strike defendant's brief. The Court has reviewed the Evidentiary Hearing's transcripts (Docket No. 72) and defendant was only allowed to file certified translations to two exhibits evidencing the meaning of the word "negrito" within the Puerto Rican language. Consequently, plaintiff's request to strike is hereby **GRANTED**. The Clerk of Court is **INSTRUCTED** to provide a Docket Entry to the attachments submitted by defendant at Docket Entry No. 75.

involved in the discriminatory conduct and at the same time were the persons to provide relief pursuant to the internal grievance procedure. Defendant filed a motion for reconsideration (Docket No. 57) which was granted in part to admit into the Court's analysis the defendant's Reply motion, and denied in part as to the merits of defendant's request. (Docket No. 59). Finally, on January 10, 2006, an Evidentiary Hearing (wherein the parties merely argued their respective positions) was held on the issue of certification (Docket No. 71).

Defendant sustains that the Court has misapplied the *Reed* mandate because the undersigned failed to require that plaintiff's failure to exhaust the grievance procedure be based on an argument of futility or "credible fear" that his complaints will not be taken seriously or that an adverse employment action will result from the filing of a complaint within plaintiff's employer internal grievance procedure. Defendant affirms that the Court has allowed plaintiff to sidestep the *Faragher/Ellerth* test with futility allegations that are not tied to "credible fears" related to, or probable of employment retaliation. Accordingly, defendant avers that the Court has committed legal serious error by not following "the standard required by the First Circuit (and other circuits)" regarding the application of the 'objective' and 'subjective' test in evaluating a claimant's apprehension to exhaust its employer's grievance procedure. Further, defendant affirms that the instant request for an interlocutory appeal must be granted as a result of the Court's misapplication of the "subjective test" in its evaluation of the second prong of the *Faragher/Ellerth* defense, and also because the Court failed to consider the application of *Reed*'s mandate or in the alternative, should the Court implicitly have considered *Reed*, the Court misapplied said mandate. Finally, defendant avers that an interlocutory appeal in the instant case is warranted because "the only mechanism available to defendant to review whether this honorable court has properly applied the *Reed* rules, is through an interlocutory review pursuant to 28 U.S.C. §1292(b)".

Plaintiff counters by stating that defendant's request is essentially "its third attempt at avoiding liability under well settled rules in this run of the mill employment discrimination case". Plaintiff avers that there is plenty of evidence on the record sustaining the Court's conclusion that plaintiff's failure to exhaust defendant's internal grievance procedure was grounded on the "credible fear" that his complaint was not to be taken seriously. In support of its position, plaintiff points to statements within the record showing all the instances, in which supervisors and upper management personnel were involved in the pattern of making racial comments about the plaintiff hence creating a genuine issue precluding summary judgment on the fact that plaintiff's fear to complaint was well

grounded on futility.

## STANDARD OF REVIEW UNDER 28 U.S.C. §1292(b)

28 U.S.C. §1292(b) provides that:

> When a district judge, in making in a civil action an order not otherwise, appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

According to this Rule, the District Judge, may in the exercise of its discretion, choose to certify certain non-final, interlocutory orders as eligible for immediate appellate review. Accordingly, when a District Judge is of the opinion that an otherwise unappealable order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of litigation, the judge may state this in writing, and then, the appellate court, may in its discretion, permit an appeal to be taken from such order. However, it is known that the Court of Appeals for the First Circuit does not favor piecemeal litigation. In re Heddendorf, 263 F.2d 887, 888-889 (1st Cir. 1959). Furthermore, the fact that appreciable trial time may be saved is not determinative, Palandjian v. Pahlavi, 782 F.2d 313, 314 (1st Cir. 1986), and neither is the fact that the case has tremendous implications or might materially advance the ultimate termination of litigation. Slade v. Shearson, Hammill & Co., Inc., 517 F.2d 398, 400 (2nd Cir. 1974). Consequently, "an appeal under §1292(b) is to be used sparingly, and appeals under it are, accordingly, hen's teeth rare". Camacho v. Puerto Rico Ports Authority, 369 F.3d 570, 573 (1st Cir. 2004).

## LEGAL ANALYSIS

The clear language of the statute provides that the initial determination that an appeal is desirable resides in the discretion of the district judge. In the instant case, the undersigned deems that such an interlocutory appeal is not desirable because there is no controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The Court explains.

Even this Court openly accepting that the undersigned failed to discuss *Reed* "objective" and "subjective" analysis in the Court's Opinion and Order denying defendant's request for summary judgment and the successive denial of its motion for reconsideration, the conclusions initially

reached remains unaltered.  The evidence on the record and the applicable jurisprudence leads to the identical result because the Court deems that there are issues of credibility and of weighing of evidence precluding brevis disposition.  Firstly, it is well settled law that "a complainant cannot bypass an adequate complaint procedure if the failure to do so was 'objectively unreasonable for one in [the complainant's] position'".  *Reed v. MBNA Marketing Systems, Inc.*, 337 F.3d 1 (1st Cir. 2003)(*rehg. en banc denied).*

Defendant hangs his hat on its understanding of *Reed v. MBNA*, sustaining that said case stands for the proposition that a complainant must exhaust internal grievance procedures within the employer except in those rare cases wherein "the employee must to have a concrete reason to apprehend that complaint would be useless".  Furthermore, defendant affirms that such apprehension must amount to a "credible fear" that the complaint will not be taken seriously or that an adverse employment action will be suffered.  Finally, defendant avers that the relevant First Circuit jurisprudence points to the fact that "unless patently futile, normally the employee's concern as to whether the complaint mechanism will fail should be 'tested by trying it out'", and precisely, that is what plaintiff has failed to do.

An examination of *Reed* reveals clearly delineated instances in which failure to file a complaint becomes unreasonable.  The *Reed* court examined relevant jurisprudence from other sister circuits to conclude that these courts have focused on whether "the employee had a concrete reason to apprehend that complaint would be useless or result in affirmative harm to the complainant".  *Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d at 35-36.  Reasonableness of failing to file the grievance procedure has been determined in instances wherein the supervisor has proffered "repeated threats of retaliation" and "influence at the [employer]".  *Mota v. The University of Texas Houston Health Science Center*, 261 F.3d 512, 516 (5th Cir. 2001).  Further, in *Distasio v. Perkin Elmer Group*, 157 F.3d 55, 64-65 (2nd Cir. 1998) failure to file the grievance procedure was found reasonable because of claimant's fear to loose her job resulting from her supervisor's threats that filing the complaint would result in dismissal.  However, the employee's "claims of futility or adverse consequences have to be 'credible'".  *Caridad v. Metro-North Commuter Railroad*, 191 F.3d 283, 295 (2nd Cir. 1999).

However, at summary judgment stage, as the Court is at this time, failure to exhaust the employer's internal grievance procedure becomes an issue examined in light of "whether a reasonable jury, resolving credibility and inference issues on plaintiff's favor, could choose to side

with [plaintiff]". *Reed*, 333 F.3d at 37(*citing*, *Distasio*, 157 F.3d at 64-65). In *Reed*, the Court determined that embarrassment alone was not an excuse. In the instant case, embarrassment is not an issue. The evidence on the record, at summary judgment stage, reveals that plaintiff knew and had previously exhausted the internal grievance procedure on behalf of fellow employees. Furthermore, the record reveals that the discriminatory scheme faced by plaintiff at his workplace encompassed his immediate supervisor as discriminatory actors all the way to the upper management.

Specifically, the record reveals that Julio Nieto, plaintiff's immediate supervisor, and Jose Alicea, Comptroller, made racial jokes publicly as to plaintiff. Furthermore, the Human Resources Director, Mrs. Lydia Vazquez, was physically present at some instances wherein the jokes were publicly made (as opposed to *soto voce*) and acquiesced to said behavior without taking affirmative action to stop them. However, defendant sustains that plaintiff's failure to proceed forth with the complaint before Mr. Jose Betancourt, the Plant Manager, on the ground that plaintiff thought that his complaint was not to be taken seriously, should be deemed as lacking foundation. Furthermore, defendant sustains that failing to exhaust the grievance procedure, automatically evidences that defendant has met the second prong of the *Faragher/Ellerth* defense.

Defendant's proposal as to the analysis performed by the Court fails. The Court has not reasoned that when the conduct of employer's personnel responsible for entertaining discrimination or harassment claims is questionable, the reasonableness of claimant's apprehension to exhaust the grievance procedure, even with other upper management not part of the discriminatory conduct, must be submitted to the jury. Quite to the contrary, the Court analysis is grounded on the fact that, at summary judgment level, when a supervisor and upper management personnel are part of the discriminatory or harassment scheme, plaintiff has established a credibility issue encompassing weighing of evidence which must be entertained by the jury because the Court is precluded from asserting such an analysis at this stage of the proceedings; further because the jury reasonably "could choose to side with [plaintiff]". *Reed* 333 F.3d at 37.

It is known that once a plaintiff has established the existence of a hostile workplace, plaintiff must then demonstrate that the harassing conduct "which created the hostile situation should be imputed to the employer." *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 63 (2nd Cir. 1992). Further, it is also known that "when the harasser is a supervisor, the employer is presumed to be absolutely liable". *Distasio*, 157 F.3d at 63 (*citing Faragher v. City of Boca Raton*,

524 U.S. 775, 807-808 (1998)). Consequently, defendant may be liable only if plaintiff "can demonstrate that defendant either provided no reasonable avenue for the complaint or knew of the harassment but did nothing about it". *Murray v. New York University College of Dentistry*, 57 F.3d 243, 349 (2nd Cir. 1995). Accordingly, an employer is considered to have actual knowledge of the harassment if the employer or any of its agents or supervisory employees knew or should have known of the conduct. *Murray*, 57 F.3d at 249.

Consequently, "while the fact that a complaint was unreported may be relevant in considering whether an employer had knowledge of the alleged conduct, an employer is not necessarily insulated from Title VII liability simply because a plaintiff does not invoke its employer's internal grievance procedure if the failure to report is attributable to the conduct of the employer or its agent". *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986). As stated previously, plaintiff's co-workers, supervisors, and upper management were directly involved in discriminatory and/or harassing conduct. An examination of defendant's personnel policy shows that an employee could file its claim before the supervisor of its choice or before the Human Resources Director. Consequently, should plaintiff failure to exhaust the internal grievance procedure may only be excused as futile if it is grounded on the "credible fear" that an adverse employment action was to happen. We think not. The relevant jurisprudence shows that "a principal is affected by the knowledge which an agent has the duty to disclose to the principal or to another agent of the principal to the same extent as if the principal had the information". *Distasio*, 157 F.3d at 64 (*citing Restatement (Second) of Agency §275 (1958)*).

According to this well established master-agent principle, plaintiff's supervisors and the Human Resources Director had the responsibility to stop all discriminatory remarks against plaintiff, and/or to file a complaint on plaintiff's behalf against those co-employees involved in proffering racial remarks against plaintiff. In other words, plaintiff's supervisors and managers had the duty to blow the whistle upon themselves. In such an instance, it is reasonable to conclude that a claimant may feel certain apprehension to exhaust its employer internal grievance procedure because of futility. Furthermore, in a case as the captioned case where constants racial remarks were made even in publicly held social functions relating to plaintiff's skin color, rose to plaintiff reporting said conduct to the Human Resources Department, and as alleged in the complaint, culminating in

defendant's "*de facto* discharge", apprehension is therefore, solidly grounded .[2] However, because there was a "discharge" there was a tangible employment action potentially disqualifying the *Faragher/Ellerth* defense.[3] The Court deems that plaintiff "went through his share of sacrifice and took the painful effort to impose vicarious liability" upon his employer in an attempt to collect damages under Title VII. *Reed v. MBNA*, 333 F.3d at 35.

Therefore, as in *Distasio*, the Court deems that whether knowledge of unreported racial harassment incidents can be imputed to defendant is ultimately a jury question. Likewise, the circumstances surrounding failure to report through the internal grievance procedure must also go to the jury on the question of whether supervisory liability for them can be imputed to defendant. *Distasio*, 157 F.3d 65. The Court deems that in those instances wherein plaintiff's supervisors and upper management personnel are part of the harassment scheme against a complainant and also are part of the grievance procedure, futility can be raised on grounds other than an expectancy of an adverse employment action. Specifically, because upper management is part of the harassment pattern, apprehension to whether the complaint will be taken seriously becomes more than speculative, it may amount to "credible fear". Accordingly, the *Reed* Court ruled that "a complainant cannot bypass an adequate complaint procedure if the failure to do so was 'objectively unreasonable for one in [the complainant's] position.' Op. At 37. *See also* op. At 37 ('Or, the jury

---

[2] The Court notes that in Puerto Rico the word "negrito" (blackie) may have different connotations depending in the context and the intonations used. The word literally is a diminutive of "Black" or "Negro". The word could also be merely an appreciation term. But depending on the intonation and surrounding circumstances, the word has pejorative significance relating to the Negro race.

[3] It is black letter law that "while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment". *Faragher v. City of Boca Raton*, 524 U.S at 807-808 (*citing Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762-763 (1998)). This holding has been expressly reiterated in *Reed* at 333 F.3d at 32-33 providing that:

> Notice, at the outset, that the affirmative defense does not apply where a 'tangible employment action' is taken against the employee–for example, where in the course of the harassment, the supervisor illegitimately fires or demotes the employee. *Ellerth* offered as instances of such tangible job action the following: 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257. The reason for the exclusion, relevant to the first issue before us, is importantly that the supervisor in such a case is exercising official authority even if doing so for improper purposes; and, in this instance, the courts treat the act as that of the employer, a course finding some limited basis in traditional agency law. *Id*. at 761-62, 118 S.Ct. 2257.

might conclude that whatever [plaintiff's] state of mind, a reasonable person in [its] position would have reported [harassor's] assault.'). In the captioned case, the fact that supervisors and the Human Resources Manager were part of the discriminatory pattern and also of the grievance machinery does not render plaintiff's state of mind as "objectively unreasonable". To the contrary, the apprehension as to futility of the grievance procedure was reasonably grounded.

Finally, should it be determined that the supervisors and/or the Human Resources Director had the responsibility to cease all discriminatory remarks against plaintiff, and that the Human Resources Director would be the person handling all investigative/disciplinary matters, plaintiff may be justified in his apprehension to fail to exhaust its employer's grievance procedure, even to the Plant Manager, Jose Betancourt. Moreover, because the jury could understand that plaintiff was *de facto* discharged, there is an adverse employment action and hence the claimed *Faragher/Ellerth* defense is unavailable to defendants. However, these two matters constitute questions for the jury to determine since they involve issues of credibility and/or weighing of evidence which the Court is precluded from addressing at summary judgment level.

## CONCLUSIONS

For the reasons stated herein, the Court hereby **DENIES** defendant's *Motion Requesting 28 U.S.C. §1292 Certification for Interlocutory Appeal* (Docket No. 60). The Court sets a **Pre-Trial Conference** for the **27th day of March 2006 at 5:30 p.m. Pre-Trial Order shall be filed on or before the 24th day of March 2006. Absolutely, any request for a Continuance shall be SUMMARILY DENIED.** Further, as stated previously, plaintiff's *Motion to Strike Defendant's Post Hearing Brief* (Docket No. 76) is hereby **GRANTED**. The Clerk of Court is **INSTRUCTED** to **STRIKE** defendant's *Post Hearing Brief and Submission of Translations of Exhibits* (Docket No. 75) and to provide a Docket Entry to the attachments submitted by defendant at Docket Entry No. 75.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 15TH day March 2006.

                  S/DANIEL R. DOMINGUEZ
                  DANIEL R. DOMINGUEZ
                  U.S. DISTRICT JUDGE